GRISSOM v. KITCHENS.

4-7115                                    172 S. W. 2d 422

Opinion delivered June 28, 1943.

*J. B. Milham* and *Gladys Wied,* for appellant.

*Wade Kitchens,* for appellee.

SMITH, J. Appellee filed suit in ejectment against Miler Grissom and Irene Grissom, his wife, to recover possession of a quarter section of land in Columbia county. He alleged that he had acquired title to the land by warranty deed dated February 12, 1917, from Isaac Grissom and Sallie Grissom, his wife. The property appears to have been encumbered to about the extent of its value and appellee paid Grissom $200 in addition to this indebtedness for the land. Miler Grissom is the son of Isaac Grissom, and the other heirs of Isaac intervened in this suit and alleged that Isaac, their ancestor, had, subsequent to the conveyance to appellee, repurchased the land and had paid the purchase money in full, and on their motion the cause was transferred to equity.

The allegation as to purchase and payment for the land was abandoned at the trial and the defense was there interposed that title had been acquired by adverse possession, and the cause was tried on that issue of fact. This defense was not sustained by the court, and a decree was entered awarding possession of the land to appellee, the plaintiff, and from that decree is this appeal.

The decree contains elaborate findings of fact, and, as the findings do not appear to be contrary to a preponderance of the evidence, we use them as a statement of the case. They are to the following effect.

Appellee purchased the land and received a warranty deed therefor from Isaac and Sallie Grissom, the ancestors of the defendants. A written agreement was later made by appellee to reconvey the land to Isaac Grissom, but no part of this contract was performed and by consent it was canceled and annulled.

Later a contract of sale and rent of this same land was entered into between these parties whereby, for the considerations named, appellee agreed to convey the land to Grissom with a reservation of all the oil, gas and other minerals. Grissom executed ten purchase money notes, one payable each year, but none of said notes or any part thereof was paid. This contract was also annulled by a written statement signed by Grissom reciting that he did not own the land and, in a later agreement between the parties, it was recited that Grissom had been paid $200 by appellee for the oil and gas rights in the land which Grissom had contracted to purchase, and it was recited that Grissom no longer claimed any interest in the land which he had contracted to purchase.

Still later a third contract of sale and rent was executed between appellee and Isaac Grissom which reserved the oil, gas and other minerals and purchase money notes were executed to the order of appellee, no one of which was ever paid.

It was found by the court that after the execution of this agreement Grissom abandoned the land and two years thereafter executed a writing in which it was stated that he had paid nothing under his contract and had abandoned the land, and that said agreement to purchase had become null and void and that Grissom claimed no interest in the land.

Later, in 1929, Grissom executed a contract to rent the land for the annual rental of 1,500 pounds of seed cotton and the court found that the rent was paid by Grissom each year until the death of Grissom in 1932.

After the death of Isaac, his son, Miler, entered into a written contract, dated November 17, 1932, to purchase the land, appellee retaining an undivided one-half interest in the oil, gas and other minerals. The court

found that Miler made no payment under this contract which provided that upon default in payment Miler would automatically become. the tenant of appellee and should pay an annual rental of $100, which agreement appears to have been modified to permit one bale of cotton to be paid as rent. Appellee's son, who acted as agent for his father, testified that this rent was paid until 1940 except that one year he permitted rent of less than one bale of cotton to be paid, because of the small crop grown on the land, and that prior to 1940 he had never heard of any claim being made adverse to his father, as members of the Grissom family were in possession as tenants of his father.

The court found that no rent was paid in 1938 as all the crop was required to repay a loan made Grissom by the Farm Credit Administration. The application for this and other government farm loans recited that Miler Grissom, to whom the loans were made, was cultivating the land as the tenant of appellee, who was the owner of the land.

It appears that other heirs of Isaac Grissom, besides Miler, lived on the land, but one of these testified that Miler Grissom managed the farm and sold the cotton, etc. These heirs, along with Miler, testified that they had been occupying the land for a much longer period than seven years before the institution of this suit during all of which time they had claimed to be the owners and were occupying adversely to appellee, but had paid no taxes on the land. The court found that the testimony did not sustain that contention and we concur in that finding.

It appears that the Grissom heirs had executed a deed to appellant, J. B. Milham, who had been made a party to the suit, for an undivided one-half interest in the land as an attorney's fee. This deed was canceled upon the finding that the grantors in that deed had no interest which they could convey. This finding would necessarily follow if the Grissom heirs had no interest which they could convey.

The findings of the court do not appear to be contrary to a preponderance of the evidence, and the decree

based on those findings must, therefore, be affirmed, and it is so ordered.